UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

In re:

ENERGY SMART, INC.,                              Case No. 6:05-bk-01303-ABB
                                                 Chapter 7
     Debtor.
_____/

ENERGY SMART, INC. ST.
PETERSBURG,

     Plaintiff,                              Adv. Pro. No. 6:06-ap-00108-ABB

vs.

CARLA P. MUSSELMAN, TRUSTEE,

     Defendant.
_____/

CARLA P. MUSSELMAN, TRUSTEE,

     Plaintiff,                              Adv. Pro. No. 6:06-ap-00166-ABB

vs.

EVGENY LYKOSOV,

     Defendant.
_____/


## MEMORANDUM OPINION

     This matter came before the Court on the Complaint[1] filed by Energy Smart, Inc.

St. Petersburg, the Plaintiff in Adversary Proceeding 6:06-ap-000108-ABB, against Carla

P. Musselman, the duly-elected and acting Chapter 7 Trustee ("Trustee")[2] for the

---

[1] Doc. No. 1 in 6:06-ap-00108. All document citations shall be to 6:06-ap-00108 unless otherwise noted.
[2] Main Case Doc. No. 14.

5A

bankruptcy estate of Energy Smart, Inc., the Trustee's Counterclaim,[3] and the Complaint[4] filed by the Trustee against Evgeny Lykosov in Adversary Proceeding 6:06-ap-00166-ABB.  The two adversary proceedings were consolidated and a joint final evidentiary hearing was held on December 8, 2006 at which the Trustee, Evgeny Lykosov, and their respective counsel appeared.[5]

The parties were granted leave to file briefs in lieu of closing arguments.  The parties timely filed briefs on January 5, 2007.[6]  They filed a Stipulation post-trial stipulating all exhibits offered at trial are to be admitted into evidence.[7]  The Court accepts the Stipulation and Energy Smart, Inc. St. Petersburg's Exhibits 1 through 29 and the Trustee's Exhibits A-1 through A-164 are hereby admitted.[8]  The Court makes the following Findings of Fact and Conclusions of Law after reviewing the pleadings and evidence, hearing live testimony and argument, and being otherwise fully advised in the premises.

## FINDINGS OF FACT

### Case Background

Energy Smart, Inc., a Delaware corporation and the Debtor herein ("Debtor"), executed a contract on or about July 18, 2002 (collectively with its fourteen appendices, "Contract 91") with the Committee of Education for the City of St. Petersburg, Russia ("City") to construct and install lighting systems in the City's public schools.[9]  The

---

[3] Doc. No. 31.
[4] Doc. No. 1.
[5] Counsel from the law firm of Wolff, Hill, McFarlin & Herron, P.A. represents Evgeny Lkosov and Energy Smart, Inc. St. Petersburg.
[6] Doc. Nos. 47, 48.
[7] Doc. No. 52.
[8] The Trustee, without leave of Court, filed a rebuttal brief on February 9, 2007 and Energy Smart, Inc. St. Petersburg and Lykosov objected.  The Court did not review the rebuttal brief because it was untimely filed.  The objection was sustained and the brief was stricken as untimely by Order entered on February 22, 2007 (Doc. Nos. 50, 51, 52).
[9] Trustee's Exh. Nos. 1, 2.

Debtor was to deliver approximately 344,000 lighting fixtures. Contract 91 requires the project to be completed by October 2005. David P. Wiegand ("Wiegand") executed Contract 91 as President of the Debtor. Wiegand is the sole shareholder, officer and director of the Debtor. Wiegand is an experienced businessman.

Lykosov Evgeny Aleksandrovich, a/k/a Evgeny Lykosov ("Lykosov"), was appointed the official representative of the Debtor in Russia to carry out the terms of Contract 91. Lykosov, a Russian National, lives and works in Russia. He is well-educated and experienced in business matters. He has a strong understanding of the English language.

Wiegand, as President of the Debtor, executed a three-year General Power of Attorney on April 10, 2002 granting Lykosov broad authority to "conduct, manage and negotiate all business activities related to the Contract . . . ." and, among other things: (i) to act on behalf of the Debtor; (ii) to issue other Powers of Attorney on behalf of the Debtor; (iii) to complete contracts and agreements and provide their fulfillment; and (iv) to open and close bank accounts on behalf of the Debtor.[10] Lykosov is an insider of the Debtor by virtue of the control and domination he exercised over the Debtor and Wiegand.

The Debtor opened a Representative Office in the City, managed by Lykosov, to carry out Contract 91.[11] Energy Smart, Inc. St. Petersburg, a/k/a Energy Smart St. Petersburg, a/k/a ESI St. Petersburg ("ESISP"), a Russian Federation Joint Stock Company, was formed by Lykosov to handle certain aspects of Contract 91. Lykosov, as

---

[10] Trustee's Exh. Nos. 2, 3. The Debtor appointed Vladmir Tokhver as its alternate agent (*see* Trustee's Exh. No. 4).
[11] Trustee's Exh. No. 7.

Director, is the representative in Russia of ESISP.[12]   The Debtor was to pay Lykosov a commission for his services pursuant to a Representative Agreement Wiegand and Lykosov executed in 2002.[13]

Contract 91 sets $18,000,000.00 (U.S.) as the "value" of the agreement to be paid to the Debtor.[14]   An advance payment of $2,700,000.00 (U.S.) was made to the Debtor by the City.   Payment of the contract balance was conditioned upon the presentation to the City of written documentation, referred to as an "Act of Object acceptance for guarantee operation," stating an installation was completed and operational.[15]   Presentation of documentation referred to as an "Act of Object final acceptance" was also required.[16] The parties referred to such documentation as "Acts of Acceptance."

ESISP is not a party to nor is it referred to in Contract 91.   No agreements exist between the Debtor and ESISP relating to Contract 91, including performance and payment terms.   ESISP is the Representative Office of the Debtor.   It was created solely to carry out the Debtor's performance of Contract 91 in Russia.   The Provision executed by Lykosov sets forth the legal status of the Representative Office:

> 3.2 Representative Office is a separate department.   Representative Office represents and protects [the Debtor's] interests.
> 3.3. Representative Office is not a legal person, acts in the name of [the Debtor] on the basis of Provision approved by [the Debtor's] decision . . . Representative Office shall not engage in business activity.
> . . .
> 3.5 Representative Office shall not engage in commercial activity in its own name, but acts in the name and on behalf of the establishing Company [the Debtor].   The Company that established Representative Office is responsible for its activities.[17]

---

[12] Lykosov was appointed Director pursuant to the Provision About Representative Office of Closed Joint-stock Society "Energy Smart, Inc" ("Provision") executed by Lykosov on May 12, 2001 (*see* Trustee's Exh. No. 7 at ¶ 3.4).
[13] Trustee's Exh. No. 8.
[14] Id. at ¶ 3.1.
[15] Id. at p. 4, ¶ 14, Article 13.
[16] Trustee's Exh. No.1 at p. 5, ¶ 15.
[17] Trustee's Exh. No. 7 at Section 3.

4

ESISP has no separate existence apart from the Debtor.  ESISP is an insider of the Debtor.

The project commenced with Lykosov controlling and managing the Debtor's performance.  Lykosov engaged staff for the ESISP office who included: Andrey Muravko, Assistant Director; Sergei Chennishov, Technical Manager; Daria Razumova, Project Manager; various drivers; a secretary; two installers; and various day laborers. Lykosov and Wiegand worked together closely and communicated frequently.  Lykosov performed services for the benefit of the Debtor and infused funds into the project, which he considered loans.  Work apparently began before Contract 91 was funded and Lykosov helped to finance the initial work.  Lykosov failed to produce any documentation evidencing the alleged loans or the services he performed.  The value of Lykosov's services and the infusion amounts are undetermined.

The Debtor engaged various American vendors, including Global Assemblies and Manufacturing Trust Corporation ("Global"), to manufacture and supply lighting equipment for Contract 91.  ESISP was apparently responsible for the installation of the lighting fixtures and engaged Russian subcontractors for the installations.   The installations generated what Lykosov and Wiegand termed "local costs" ("Local Costs"). The phrase "Local Costs" is not defined in Contract 91.

Lykosov was involved with all aspects of the creation, performance, and payment of Contract 91.  He was involved with the performance occurring in Russia, in person, and in the United States through email and telephone communications, conducted in English, with Wiegand and others.  Lykosov oversaw the inspection process and signed the Acts of Acceptance.  He had influence in the payment process.  He caused the

5

Acts of Acceptance to be transmitted to the City for review. The City would notify Lykosov when it was ready to make a payment. Lykosov and Wiegand would prepare, execute, and present invoices to the City. The City would wire funds into the Debtor's United States bank accounts and/or accounts controlled by Wiegand.

Wiegand, typically at Lykosov's direction, would disburse the funds received from the City. Disbursements were erratic and made to various persons and entities without supporting documentation or explanation including: Lykosov, ESISP, Nikolai Ermanakov, Croftmore Enterprises, Dominium Enterprises, EVGL Corporation, V&S Corporation, Fort Point Limited, Valery Kontamtinov Global, and various lawyers. Many of the disbursements are suspect in that no supporting documentation exists or the documentation provided by Wiegand or Lykosov does not substantiate or correlate with the disbursement amounts.

### EIC Joint Venture and Energy Smart, Inc. Florida

The Debtor, prior to executing Contract 91, executed a Joint Venture Agreement with Energy Innovations Co. ("EIC") on or about April 20, 2001. The Debtor agreed to split Contract 91 profits with EIC; EIC would receive 58% and the Debtor would receive 42%.[18] Contract 91 is the only significant asset of the joint venture.

The relationship between EIC and the Debtor unraveled and litigation was initiated in New York state court. EIC alleged contract breach, civil theft, and other causes of action. EIC asserts Energy Smart FL was created by Wiegand as a subterfuge to keep the profits of Contract 91 from EIC. The Supreme Court of the State of New York, County of Erie, entered an Order on September 29, 2003 ("Property Rights Order") in the case captioned Energy Smart, Inc. v. Energy Innovations Co., A Division of

---

[18] Trustee's Exh. No. 13.

6

Entrepreneurs Investment Corporation, Index No. 2002/13379 finding: (i) a joint venture exists between EIC and the Debtor; (ii) Contract 91 is an asset of the joint venture; and (iii) pursuant to the Joint Venture Agreement, EIC owns 58% and the Debtor owns 42% of the joint venture.[19]

Wiegand, in the midst of the EIC litigation, created Energy Smart, Inc. ("Energy Smart FL"), a Florida corporation, in 2003 with an address of 449 Birchington Lane, Melbourne, Florida (the "Melbourne Address"), Wiegand's home. Wiegand is the President and sole shareholder of Energy Smart FL. Energy Smart FL appears to have been created in an effort to thwart EIC's efforts to enforce its Joint Venture rights. Wiegand has represented the Debtor assigned its rights and interests in Contract 91 to Energy Smart FL in the fall of 2003 and then to ESISP in late 2004.[20] Wiegand admitted no value was paid to the Debtor for the alleged transfer.

Wiegand utilized the Debtor and Energy Smart FL interchangeably. He conducted Contract 91 business through both the Debtor and Energy Smart FL, making no distinction between the two.[21] He opened bank accounts for each entity and used the accounts for receiving City payments and disbursing funds. He exercised control over each entity, operating them from his home. Lykosov treated the entities as if the were interchangeable.[22]

---

[19] Trustee's Exh. No. 18.
[20] See Trustee's Exh. No. 14.
[21] See, e.g., Trustee's Exh. No. 7. Wiegand, in March 2004, sent a letter bearing Energy Smart FL's seal to the City confirming the powers granted to Lykosov through the Power of Attorney executed by the Debtor in 2002. See, e.g., Trustee's Exh. No. 138: Wiegand's Letters of Acknowledgement to the City acknowledging receipt of funds bear Energy Smart Fl's seal. Wiegand discussed the Debtor and Energy Smart FL as if they are one and the same: ". . . . the Trustee is holding approximately $485,745 in various Trustee accounts while the Debtor, ESI (Delaware and Florida) and the owner, David Wiegand are bankruptcy in the amount of over $400,000."
[22] Lykosov and Wiegand also used the corporate name "Energy Smart, Inc., USA" in referring to the Debtor and Energy Smart FL. "Energy Smart, Inc., USA" is the Debtor.

7

***Bankruptcy Case Events***

The Debtor filed Case No. 6:04-bk-05540-ABB, Chapter 11, on May 13, 2004 apparently in response to the EIC litigation. Wiegand executed the Petition as President of the Debtor. The Debtor listed Contract 91 as an asset in its Schedule B[23] and disclosed in its Brief Summary of Chapter 11 Case: "The Debtor-in-Possession['s] sole asset is a Contract for Energy Efficient Lighting to the City of Saint Petersburg, Russia."[24] It subsequently represented to the Court Contract 91 had been cancelled.[25] The case was dismissed on August 16, 2004 (with a 180-day filing injunction) based upon the Debtor's representations Contract 91 was cancelled.[26]

The Debtor filed the above-captioned Chapter 7 case on February 14, 2005.[27] Wiegand executed the Debtor's Petition and is the designated representative of the Debtor. The Debtor listed no assets in its original schedules, including any interest in Contract 91. The Schedule F creditors relate to Contract 91. The Debtor lists EIC as having an unsecured claim of $0.00.[28] EIC, the Debtor's largest creditor, filed an unsecured claim, Claim No. 8, in excess of $12,000,000.00 for alleged damages relating to the joint venture.[29]

The Debtor attempted to dismiss the current case alleging "there are no assets owned by the debtor nor income available to the debtor which could be available for

---

[23] Trustee's Exh. No. 21.
[24] Trustee's Exh. No. 22.
[25] *See* Trustee's Exh. No. 24.
[26] *See* Trustee's Exh. No. 26.
[27] The Court takes judicial notice of the Debtor's previous case, its pending Chapter 7 case, the case dockets, and all case filings.
[28] Main Case Doc. No. 1.
[29] EIC claims an interest in Contract 91 pursuant to the Joint Venture Agreement and the Property Rights Order. The Court ruled in open Court on April 25, 2006 that it gives full faith and credit to the State Court Order pursuant to 28 U.S.C. § 1738. EIC's interest is undetermined and will be addressed through the claim objection process. The Trustee is to file an objection to EIC's Claim No. 8 (Trustee's Exh. No. 13). This unresolved issue does not impact the resolution of the above-captioned adversary proceedings. To the extent EIC's claim is allowed, or partially allowed, it shall be allowed to share in a distribution of property of the estate in accordance with the distribution scheme of 11 U.S.C. Section 726(a).

8

distribution to the debtor's creditors."[30]  The dismissal motion was denied.  The existence of Contract 91 and a Colonial Bank account, purportedly owned by Energy Smart FL into which the City wired payments for Contract 91, came to light through discovery conducted by the Trustee.  Wiegand has been unresponsive to the Trustee's requests for information and obstreperous throughout these proceedings.

EIC and Energy Smart FL have been active participants in the Debtor's bankruptcy case.  Both entities are represented by counsel.

The Court issued a temporary restraining order on June 1, 2005 freezing all bank accounts in the name of Energy Smart, Inc., including bank accounts at Colonial Bank, Bank of America, HSBC Bank, and enjoining Wiegand, Energy Smart, Inc. and others from withdrawing any funds related to Contract 91.[31]  Subsequent Orders were entered on June 27, 2005[32] continuing the temporary restraining order, directing the proceeds of Contract 91 to be transferred to the Trustee's trust account, and authorizing the Trustee to pay certain vendors and suppliers.  The City, after entry of these Orders, paid approximately $926,000.00 into the Colonial Bank account, which amount was transferred to the Trustee's account.

The Debtor had an ownership interest in Contract 91 on the Petition Date, which interest constituted property of the estate.  All payments made by the City postpetition constitute property of the estate.

### Trustee's Operation of Debtor's Business and Sale

The Trustee, by Order entered on June 27, 2005 (Doc. No. 53) (the "June 27, 2005 Order"), was authorized to conduct the Debtor's business.  The Trustee, pursuant to

---

[30] Main Case Doc. No. 18.
[31] Main Case Doc. No. 32; Trustee's Exh. No. 27.
[32] Main Case Doc. Nos. 50, 52; Trustee's Exh. Nos. 29, 30.

the authority granted to her by the June 27, 2005 Order and in accordance with her statutory Trustee duties, diligently attempted to salvage Contract 91 and maximize the estate's interest in that asset. She conducted several lengthy meetings with Wiegand, Reeves, and other involved parties. She secured payment of $926,193.82 from the City. She reviewed vendor invoices submitted in connection with the performance of Contract 91. She authorized certain payments to vendors from the funds received from the City.

### *Invoice Nos. 13 and 14*

Wiegand presented Invoice Nos. 13, dated March 16, 2005, and 14, dated May 13, 2005 to the Trustee in 2005.[33] The invoices were issued in the name of "Energy Smart, Inc. Representative Office in Russia" and executed by Lykosov as the "Representative Office Director." Invoice No. 13 is for $147,820.77 for the alleged installation of 22,109 fixtures and Invoice No. 14 is for $129,153.46 for the alleged installation of 19,317 fixtures. The City paid the invoices by wiring $147,820.77 on July 5, 2005 and $129,153.46 on July 12, 2005 to the Colonial Bank account.[34]

The Trustee requested supporting documentation and Acts of Acceptance (in Russian) were provided to her. The Acts of Acceptance appear to reflect inspections were performed by City officials and an ESISP representative. Reeves asserted payment of the invoices was critical. Demands were made for the Trustee to pay the invoices. The Trustee, in furtherance of her duties as Trustee and in accordance with Court Orders, issued payment to ESISP of $276,974.23 from the funds received from the City for payment in full of Invoice Nos. 13 and 14.[35]

---

[33] Trustee's Exh. Nos. 135, 136.
[34] ESISP's Exh. No. 12.
[35] The Trustee's Estate Cash Receipts and Disbursements Record (ESISP's Exh. No. 5) reflects disbursements of $147,820.77 made on July 5, 2005 and $129,153.46 made on July 11, 2005.

### *Sale of Contract 91*

The Trustee worked diligently to find a means for completing Contract 91. She, after a failed mediation[36] and extensive negotiations with the various parties, determined a sale of the Debtor's interest in Contract 91 was in the best interests of the estate and the creditors. She executed an Agreement for Sale of Contract 91 (collectively with its exhibits, "Sale Agreement")[37] on September 8, 2005 to sell all of the estate's rights, title and interest in Contract 91 to Global. The Sale Agreement was executed by: Wiegand individually, as President of Energy Smart FL, and as President of the Debtor; David Wildman as counsel for the Debtor; Larry Reeves individually and as Business Manager of Global; Stephen E. LaGrou as counsel for EIC; and the Trustee.

The Contract 91 purchase price included Global's release of all claims against the estate and EIC, payment of $300,000.00 by Global to the Trustee, and Global's payment of all administrative claims arising on or after June 27, 2005 (with certain exceptions). The purchase terms include: (i) a holdback provision whereby the Trustee shall withhold fifteen percent of the funds received from the City and transfer the balance (85%) to Global; and (ii) the Trustee shall retain fifty-eight percent of the holdback in escrow subject to resolution of EIC's claim.

Wiegand conceded in the Sale Agreement, the transfer of Contract 91 from the Debtor to Energy Smart FL was a fraudulent transfer avoidable pursuant to bankruptcy and Florida statutory law. Any transfer of Contract 91 from the Debtor to Energy Smart FL is invalid. The Debtor had an ownership interest in Contract 91 on the Petition Date

---

[36] The Trustee executed an Agreement on July 8, 2005 (Doc. No. 66) regarding performance of Contract 91 with Global, Larry Reeves ("Reeves"), the Business Manager/Principal of Global, Energy Smart FL, and the Debtor. EIC objected to the Agreement and the parties were ordered to participate in mediation. The mediation was unsuccessful and the Agreement was not approved by the Court.

[37] Trustee's Exh. No. 34.

11

and such interest constituted property of the estate.  The funds received by the Trustee from the City relating to Contract 91 constitute property of the estate.

The Sale Agreement and the Trustee's motion to approve the proposed sale were served on all known creditors of the Debtor, Energy Smart FL, Global, all parties involved with Contract 91 per the information provided by Wiegand, and Lykosov at his address in Russia.  A hearing on the proposed sale was duly noticed and the Court approved the Sale Agreement pursuant to the Order entered on September 12, 2005 (Doc. No. 81) ("Sale Order").  The Sale Order was served on all interested parties, including Lykosov, as the representative of ESISP.  The sale of Contract 91 was consummated.

### *Waiver*

Wiegand conceded in the Sale Agreement ESISP "does not have any valid claims to ownership of the [Contract 91] or against the estate."[38]  The Sale Agreement incorporates a Waiver and Release ("Waiver") executed by Lykosov as the Director of ESISP providing:

> ESI St. Petersburg has never and does not have any ownership in Contract 91 with the City of St. Petersburg, Russia.
> ESI St. Petersburg, hereby waives any right, title, and/or interest that it may hold or had ever held in that certain contract by and between Energy Smart, Inc. of Delaware and the City of St. Petersburg, Russia (commonly known as 'Contract 91').  ESI St. Petersburg further releases, release [*sic*], acquits, satisfies and forever discharges Carla Musselman, as Trustee, Global Assembly and Manufacturing Company Trust, Energy Innovations, Inc., Energy Smart, Delaware, Inc., and Energy Smart, Florida, Inc. and all of its officers, directors, employees, agents, contractors, attorneys, and law firm, of and from all, and all manner of action and actions, cause and causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialities, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, executions, claims and demands whatsoever, in law or in equity, which said first party ever had, now demands whatsoever, in law or in equity, which said first party ever had, now has, or which any personal representative, successor, heir or

---

[38] Trustee's Exh. No. 34 at p. 3 of Sale Agreement.

12

assign of said first party hereafter can, shall or may have, against said second party for, upon or by reason of any matter, cause or thing whatsoever, from the beginning of the world to the day of these presents regarding or in any way connected to or related to the said Contract 91.

The Trustee relied on the Waiver to execute the Sale Agreement and effectuate the sale of Contract 91. She would not have executed the Sale Agreement without the Waiver.

Lykosov and ESISP now challenge the Waiver contending Lykosov did not understand its terms and did not agree to waive any rights. Lykosov and Wiegand were in continuous communication throughout this bankruptcy case.[39] Lykosov was also in communication with Reeves.[40] Wiegand, Lykosov, and Reeves communicated almost daily during the negotiation, drafting, and execution of the Sale Agreement and Waiver.[41] Wiegand and Reeves interfaced directly with the Trustee regarding the formation of the Sale Agreement and Waiver and reported to Lykosov. Lykosov understood the events and issues, received and reviewed drafts of the Waiver and Sale Agreement, and communicated his thoughts and strategies to Wiegand and Reeves.[42] He added language

---

[39] *See, e.g.,* Trustee's Exh. Nos. 40, 41, 42, 43, 46, 48, 56, 58, 59, 60, 67, 70, 72. Sometimes the communications flowed through Lykosov's employees in Russia.

[40] *See, e.g.,* Trustee's Exh. Nos. 41, 42, 43, 45, 47, 48, 49, 50, 51, 52, 53, 54, 55, 57, 64, 65, 66, 68, 69, 71, 102.

[41] *See* Trustee's Exh. Nos. 48, 49, 50, 51, 52, 53, 54, 55, 57, 64, 65, 66, 72, 73, 74, 75, 76, 79, 80, 81, 83, 85, 86, 93. Lykosov wrote to Reeves (Trustee's Exh. No. 50): "I think it is necessary to improve relationship with Trustee and her lawyer. For this pu[r]pose Dave [Wiegand] should cooperate with them and you should proceed to help them to prepare the documentation." Lykosov stated to Wiegand (Trustee Exh. No. 77): "It seems to be necessary to include in Agreement draft that you are the person who still represents American side related to the Contract 91 when any possible meetings or negotiations with the City of S-Petersburg." Wiegand responded: (Trustee's Exh. No. 78): "I [wish] it was simple to add your request to agreement but as of today there is still 2-3 problems to finalize agreement."

[42] *See, e.g.,* Trustee's Exh. Nos. 51-63, 64-67, 69-79, 83. On August 28, 2005, Wiegand wrote to Lykosov (Trustee's Exh. No. 81): "The *Agreement* has been negotiated (definitely **not** to ESI/Wiegand advantage ) and will be ready for signing tomorrow. The trustee attorney wants you to sign the *Agreement* that you agree that ESI St. Petersburg does not claim ownership rights of Contract 91 so that transfer can be made from ESI to Global (on US side only). I will have a copy of the *Agreement* tomorrow morning, our time and I will immediately fax it to you . . . ." Lykosov wrote to Reeves on August 30, 2005 discussing the Waiver contents (Trustee Exh. No. 83).
   The communications reveal Lykosov and Wiegand explored diverting City payments from the Trustee. On December 4, 2005, Wiegand wrote to Lykosov (Trustee's Exh. No. 99): "In order for you to get Local Cost for the remaining fixtures I suggest you ask City to pay LC directly to ESI St. Petersburg. We discussed this option 2-3 months ago but nothing came of it. I would support it now so no LC money come to US."

13

to the Waiver.[43]  Lykosov admitted ESISP did not ever have an ownership interest in Contract 91.[44]

It was important to Lykosov and Wiegand, for reasons related to Russian law, that ESISP not be a party to the Sale Agreement.  The Waiver was created to alleviate the need for ESISP to be a party to the Sale Agreement.  Lykosov and ESISP were fully aware of and understood the Sale Agreement and Waiver provisions and their consequences.  The Waiver language is plain and unambiguous.  Neither Lyskosov nor ESISP established any basis for amending or invalidating the Waiver.  The Waiver is valid and binding upon ESISP.  ESISP waived all rights, title and interest in Contract 91 and claims against the Trustee, Global, EIC, the Debtor, and Energy Smart FL.

Lykosov and ESISP had full knowledge and notice of the Sale Agreement, the sale approval process, and the entry of the Sale Order.  They neither objected to the motion to approve the sale nor sought reconsideration or appeal of the Sale Order.  The Sale Order constitutes a final, non-appealable order decided on the merits by a court of competent jurisdiction.  It is entitled to preclusive effect.  Their challenge of the Sale Order is barred by the doctrines of res judicata, collateral estoppel, and law of the case. The bar dates for asserting unsecured and administrative claims have expired.

### The Adversary Proceedings and Counterclaim

ESISP, Lykosov, and the Trustee instituted litigation against each other through two adversary proceedings and a counterclaim:

(1)  **ESISP's Complaint:**  ESISP instituted Adversary Proceeding No. 6:06-ap-00108-ABB against the Trustee through a one-count Complaint "for conversion"[45]

---

[43] Trustee's Exh. Nos. 82, 84, 119.
[44] Trustee's Exh. No. 150, ¶ 13.

14

("ESISP's Complaint") contending the Trustee wrongfully took the City's payments of $136,200.51 and $61,711.78 relating to Invoice Nos. 15 and 16. ESISP alleges the Trustee's "wrongful retention and refusal to pay over these monies to the Plaintiff constitutes conversion of the Plaintiff's property."[46]  ESISP seeks judgment of $177,912.29 against the Trustee.

    **(2) Trustee's Counterclaim:**   The Trustee filed, in response to ESISP's Complaint, a five-count counterclaim against ESISP ("Counterclaim") in which she alleges various persons and entities received transfers of monies that are recoverable pursuant to the Trustee's strong-arm powers.

    **(3) Trustee's Complaint:**   The Trustee instituted Adversary Proceeding No. 6:06-ap-00166-ABB against Lykosov through a five-count Complaint ("Trustee's Complaint")[47] contending in her Complaint transfers totaling $1,373,938.35 made to Lykosov and persons and entities affiliated with him are recoverable pursuant to Sections 544, 547, 548, 549, and 550 of the Bankruptcy Code and Section 726 of the Florida Statutes. Her Adversary Proceeding is virtually identical to her Counterclaim.

    Lykosov testified through a Russian language translator. His testimony generally lacked credibility.

### *ESISP's Complaint*

    ESISP's Complaint apparently relates to civil conversion, not criminal, but does not set forth the elements of civil conversion, which is a state law cause of action. The Complaint fails to set forth the jurisdictional basis for this Court's determination of the

---

[45] Complaint at p. 1.
[46] Complaint at ¶ 21.
[47] The fifth count of the Trustee's Complaint relates to Section 550 of the Bankruptcy Code and is mislabeled as "Count IV." This cause of action shall be referred to as Count V.

matter.  ESISP's closing brief does not elucidate what the term "conversion" means, its elements, or what state law governs a conversion action.  The Trustee has not challenged the Complaint on jurisdictional grounds.    The conversion claim concerns the administration of the estate and affects the Trustee's liquidation of assets.  The claim constitutes a core proceeding and the Court has jurisdiction to determine such claim.

### *Invoice Nos. 15 and 16*

Wiegand and Lykosov prepared Invoice No. 15 dated July 13, 2005 and issued in the name of "Energy Smart, Inc. Representative Office in Russia" for payment of $136,200.51 for the alleged installation of 20,371 lighting fixtures in thirty-five schools.[48] Invoice No. 15 is highly suspicious in that no supporting documentation was provided to the Trustee with the invoice and differing versions of the invoice exist:  (i) Trustee's Exh. No. 137 executed by Wiegand on "7/13/05" and bearing Energy Smart FL's seal; (ii) Trustee's Exh. No. 138 executed by Lykosov as the "Representative Office Director" (with no date of execution set forth); (iii) Trustee's Exh. No. 134 executed by Wiegand on July 13, 2005 and (iv) ESISP's Exh. No. 2 executed by Wiegand on July 13, 2005 (in which his signature and the date are distinctly different from those in Trustee's Exh. No. 134).

ESISP never made demand for payment of Invoice 15.  The issue of payment was not raised until January 2006—significantly after the Waiver was executed and the sale consummated.[49]

Wiegand and Lykosov prepared Invoice No. 0016 dated September 12, 2005 for payment of $61,711.78 for the installation of 9,230 lighting fixtures in twelve schools.

---

[48] Trustee's Exh. No. 138.
[49] The issue of payment of Invoice No. 15 was not raised until January 31, 2006.  Wiegand sent an email as "David Wiegand Energy Smart, Inc." to the Trustee (Trustee Exh. No. 137).  Wiegand was not acting on behalf of ESISP.

Like Invoice No. 15, Invoice No. 16 is highly suspicious in that no supporting documentation was provided to the Trustee when the invoice was presented and multiple versions of the invoice exist.[50]  No invoices were in the business records produced to the Trustee and some of the Acts of Acceptance Wiegand and Lykosov allege support Invoice 16 are dated after September 12, 2005.  Lykosov testified the invoices were created for the Trustee.[51]  Furthermore, Wiegand and others implored the Trustee throughout the case to not contact the City to obtain information, alleging such contact would cause the demise of Contract 91.

The City wired $136,200.51 on July 21, 2005[52] and $61,711.78 on September 29, 2005[53] into the Colonial Bank account.  The Trustee is holding the funds.  The Trustee refuses to pay Invoice No. 15 on the basis the invoice is, unsupported, is dated prior to the date of the Waiver, and ESISP waived any right to pursue the Trustee for payment. The Trustee refuses to pay Invoice No. 16 on the basis it is dated post-sale, is unsupported, and payment is Global's obligation pursuant to the sale terms.  The Trustee's decision to not pay Invoice Nos. 15 and 16 is within the authority granted as a Chapter 7 Trustee and the June 27, 2005 Order.

ESISP contends it is entitled to the City's payments for Invoices 15 and 16. ESISP alleges the Trustee has wrongfully retained the $177,912.29 from Invoices 15 and 16 and her refusal to issue payment constitutes conversion.  ESISP seems to suggest a form of trust relationship exists whereby the funds paid by the City were to be paid to

---

[50] Trustee's Exh. No. 137 executed by Wiegand on 9/12/05; Trustee's Exh. No. 138 executed by Lykosov (undated signature); and ESISP's Exh. No. 6 executed by Wiegand on September 12, 2005 (again, this signature and date are distinctly different from Trustee's Exh. No. 137).
[51] Email communications between Wiegand and Lykosov reflect irregularities in the creation of Invoice 16, and the invoices in general.  See Trustee's Exh. Nos. 74, 75 (Wiegand to Lykosov on August 17, 2005: "I did [send] you the LC Invoice 16 and 20 blank invoices with seals. Fed Ex tracking no. is 8394-8255-5584."); Trustee's Exh. No. 88 (Wiegand to Lykosov on September 29, 2005: "Please send the ESI seals back immediately.")
[52] ESISP's Exh. No. 4; Trustee's Exh. No. 138 (Letter from Wiegand to City acknowledging payment of $136,200.51).
[53] ESISP's Exh. No. 8.

17

ESISP for "Local Costs." [54]  ESISP and Lykosov spent a significant amount of trial time discussing "Local Costs."    The Local Cost argument is a red herring.    No trust relationship exists regarding funds paid by the City.    The Debtor and ESISP, as their business dealings reflect, never segregated or directed "Local Costs" funds to ESISP. Funds were disbursed erratically and without distinction as Lykosov and Wiegand directed.

ESISP's Complaint is barred by the Waiver and the doctrines of res judicata, collateral estoppel, and law of the case.  ESISP's claims are also barred by the expiration of the unsecured and administrative claims bar dates.  However, even if the Waiver, the estoppel doctrines, and the expiration of the bar dates do not bar the action, ESISP has failed to establish the elements of conversion pursuant to Florida state law.  The Trustee's actions complained of by ESISP occurred in Florida and Florida state law governs any asserted civil conversion claim.

All actions taken by the Trustee in the Debtor's case were pursuant to and in furtherance of her duties as a Chapter 7 trustee and in conformity with orders entered by this Court.  Her retention of the $177,912.29 was proper and in accordance with her duties as a trustee.  All of the funds recovered by the Trustee constitute property of the estate and are subject to distribution in accordance with the Chapter 7 distribution scheme.  ESISP neither has possession nor an immediate right to possess the funds. ESISP did not make demand for payment of Invoice Nos. 15 and 16 and failed to establish the Trustee converted the funds.  ESISP's Complaint is due to be denied.

---

[54] ESISP's Complaint at ¶ 9 states: "Contract 91 provides no profit for the Debtor in the Local Costs. The Debtor, and accordingly the Trustee, has no interest in the Local Costs.  The monies paid by the City for Local Costs were paid into the account of the Debtor, but the Debtor was a mere conduit and obtained no interest in the funds."

### *Trustee's Counterclaim and Adversary Proceeding*

The Trustee seeks to recover through her Counterclaim and Trustee's Complaint prepetition and postpetition transfers of funds during 2001 through 2005 made by the Debtor or Energy Smart FL, as the Debtor's alleged alter ego. The Counterclaim and Trustee's Complaint contain virtually the same causes of action. The Trustee seeks recovery of sixty-nine transfers totaling $1,373,928.35 made to Lykosov, Nikolai Ermanakov, Croftmore Enterprises, Dominium Enterprises, EVGL Corp., V&S Corporation, Fort Point Limited, and Valery Kontamtinov.[55] Her Counterclaim differs in that she seeks recovery of the $1,373,928.35 plus payments totaling $846,140.00 made to ESISP (through ten transfers) within one year of the Petition Date. It is undisputed the transfers were made.

ESISP is the only named defendant in the Trustee's Counterclaim and Lykosov is the only named Defendant in the Trustee's Complaint. Neither the Counterclaim nor the Complaint was amended. Nikolai Ermanakov, Croftmore Enterprises, Dominium Enterprises, EVGL Corp., V&S Corporation, Fort Point Limited, and Valery Kontamtinov were not named as parties to the pending Adversary Proceedings nor were they served with notice or process. They have not been afforded due process of law and the Trustee may not, in this proceeding, seek avoidance or recovery of any transfers made to these persons and entities.

---

[55] The Trustee groups all of the transfers listed in Exhibit A attached to her Counterclaim and the Trustee's Complaint as "the Transfers" and seeks avoidance of the Transfers. She does not identify in her Counterclaim or the Trustee's Complaint the specific transfers she seeks to avoid pursuant to the cited recovery statutes, which makes it difficult to resolve the Counterclaim and the Trustee's Complaint. She provided some breakdown of amounts sought and cited statutes in her closing brief.

### *Trustee's Count I*

The Trustee contends in Count I of the Counterclaim and Trustee's Complaint "the Transfers" are avoidable and recoverable for the benefit of the estate pursuant "Section 726, *Florida Statutes*, as implicated by Section 544 of the Bankruptcy Code." Florida statutory law provides for the recovery of fraudulent transfers where the fraud is actual or constructive.   Section 726 of the Florida Code sets forth various transfer recovery provisions pursuant to which a plaintiff must establish certain elements by a preponderance of the evidence.  The Trustee failed to delineate which specific Florida statutes Count I is based upon.  The Trustee did not establish the transfers were made with actual or constructive intent.  She did not establish the elements for recovery of the transfers pursuant to Section 726 of the Florida Statutes.  Count I of the Counterclaim and Count I of the Trustee's Complaint are due to be denied.

### *Trustee's Counts II, III, IV, and V*

### *Alter Ego Allegation*

The Trustee seeks to recover, pursuant to Sections 547, 548, 549, and 550 of the Bankruptcy Code, certain prepetition and postpetition transfers.  She alleges the transfers were made:

> . . .by the Debtor or an affiliated entity [Energy Smart FL].  ESI Florida is the alter ego of the Debtor, as the Debtor transferred its rights under Contract 91 (the Debtor's sole asset) to ESI Florida, without any consideration in return, as acknowledged by David Wiegand in a certain Agreement for Sale of Contract 91 dated September 8, 2005.  Due to the fraudulent transfer of Contract 91, the payments made by ESI Florida will be referred to and considered as transfers made by the Debtor for purposes of this Complaint.[56]

---

[56] Trustee's Complaint at ¶ 10.

20

The transfers were made from various bank accounts:   Key Bank Account No. 000327840042268; HSBC Account No. 714-74932-0; HSBC Account No. 156-70785-3; Bank of America Account No. 003449878078; Bank of America Business Economy Checking Account No. 0034 4732 6739 ("BA 6739 Account"); Colonial Bank Business Advantage Checking Account No. 8033991376 ("Colonial Account"); and Wachovia Bank Account No. 2000021529953.  These accounts apparently contained funds paid by the City for Contract 91.

The BA 6739 and Colonial Accounts are held in the name of "Energy Smart, Inc." with the Melbourne Address.[57]    The Trustee contends the BA 6739 and Colonial Accounts are owned by Energy Smart FL.[58]   No evidence of ownership of the various accounts, such as signature cards, was presented.  The Trustee did not establish which entity, the Debtor or Energy Smart FL, owns the bank accounts and, as a result, she did not establish which entity was responsible for making the allegedly avoidable transfers.

The Trustee contends Energy Smart FL is an "affiliate" of and the "alter ego" of the Debtor and that all transfers made by Energy Smart FL constitute transfers made by the Debtor.  The Trustee has not established Energy Smart FL is a mere device or sham to accomplish some ulterior purpose or is a mere instrumentality or agent of the Debtor. The Trustee has not established Energy Smart FL's purpose is to evade a statute or accomplish some fraud or illegal purpose.

While the circumstances of Energy Smart FL's formation are suspicious given it was formed during the ECI litigation and Wiegand, the sole shareholder of both Energy Smart FL and the Debtor, appears to have used the entities interchangeably, there is

---

[57] Trustee's Exh. Nos. 142, 160.
[58] *See* Trustee's Exh. No. 153 at "Relative Accounts" ("1376 – COLONIAL BANK account #: 8033991376 FEI # 72 – FL") and "Corp" column.

insufficient evidence to pierce the corporate veil of Energy Smart FL.  Furthermore, Energy Smart FL was not named as a defendant and served with process.  It did not have notice and a full opportunity to respond to the Trustee's allegations.  The corporate entity of Energy Smart FL may not be disregarded to recover the transfers of funds identified by the Trustee.

### *Trustee's Count II*

The Trustee contends in Count II of the Counterclaim and Trustee's Complaint certain transfers made by the Debtor or Energy Smart FL within one year of the Petition Date were fraudulent and are avoidable pursuant to Section 548 of the Bankruptcy Code. Lykosov received transfers by wire from BA 6739 and Colonial Accounts within one year of the Petition Date:  $49,000.00 on March 19, 2004; $30,000.000 on April 26, 2004; $76,000.00 on June 8, 2004; $3,000.00 on December 28, 2004; $1,000.00 on January 7, 2005; and $10,000.00 on February 8, 2005.[59]  Lykosov is allegedly entitled to post-petition credits of $27,200.00 for funds wired into the account.[60]  ESISP received ten transfers of funds totaling $846,140.00 from Bank of America, Wachovia, and Colonial Accounts during the one-year prepetition period.[61]

The Debtor was insolvent when the transfers were made.  The Trustee did not establish *the Debtor* made the transfers to Lykosov and ESISP.  The Trustee did not establish the transfers to Lykosov and ESISP were made with the actual intent to hinder, delay, or defraud existing or future creditors of the Debtor.  The Trustee did not establish the Debtor received less than a reasonably equivalent value in exchange for the transfers

---

[59] Trustee's Exh. No. 153.
[60] Lykosov's entitlement to such credits was not established.
[61] Trustee's Exh. No. 152, 159.

to Lykosov and ESISP. Count II of the Counterclaim and Count II of the Trustee's Complaint are due to be denied.

***Count III***

The Trustee contends in Count III of the Counterclaim and Trustee's Complaint the Debtor made unauthorized post-petition transfers which are recoverable pursuant to Section 549 of the Bankruptcy Code. The Trustee did not establish any post-petition transfers were made to ESISP. Count III of her Counterclaim is due to be denied.

Lykosov received two post-petition transfers of funds by wire from the Colonial Account: $5,000.00 on April 6, 2005 and $5,000.00 on April 19, 2005.[62] Lykosov was the initial transferee of these transfers. The funds in the Colonial Account on the Petition Date constituted property of the estate. The postpetition transfers to Lykosov were transfers of property of the estate. They were neither authorized by any Bankruptcy Code provision nor by the Court. Lykosov failed to establish the transfers were valid. The Trustee, however, failed to establish the transfers were made by *the Debtor*. The Colonial Account is purportedly owned by Energy Smart FL, which is a corporate entity separate and distinct from the Debtor, and not the Debtor's alter ego. The transfers are not avoidable. Count III of the Trustee's Complaint is due to be denied.

***Count IV***

The Trustee contends in Count IV of the Counterclaim and Trustee's Complaint the transfers made to Lykosov and ESISP within one year of the Petition Date are recoverable preferences pursuant to Section 547 of the Bankruptcy Code.[63] The Trustee

---

[62] Trustee's Exh. No. 160.

[63] See the Count II discussion *supra*. Lykosov received the following transfers from the Debtor within one year of the Petition Date: $49,000.00 on March 19, 2004; $30,000.000 on April 26, 2004; $76,000.00 on June 8, 2004; $3,000.00 on December 28, 2004; $1,000.00 on January 7, 2005; and $10,000.00 on February 8, 2005. He was entitled to post-petition credits of $27,200.00.

23

did not establish: (i) the transfers were made for or on account of an antecedent debt owed by the Debtor before each transfer was made; and (ii) the transfers enabled Lykosov or ESISP to receive more than he or it would have received had the transfers not been made and he or it received payment for such debts to the extent provided by the provision of the Bankruptcy Code. The transfers do not constitute preferential transfers recoverable through the Trustee's strong arm powers.[64] Count IV of the Counterclaim and Count IV of the Trustee's Complaint is due to be denied.

### Count V

The Trustee contends in Count V of the Counterclaim and Trustee's Complaint she is entitled to recover all avoided transfers. The Trustee did not establish any transfer is avoidable. Count V of the Counterclaim and Count V of the Trustee's Complaint are due to be denied.

## CONCLUSIONS OF LAW

### ESISP's Complaint

ESISP's Complaint references "conversion," but fails to delineate what law ESISP relies upon in bringing the ESISP Complaint. ESISP's closing brief is equally deficient. ESISP presumably founded the ESISP Complaint on Florida state law given the Trustee's actions complained of occurred in Florida and the underlying bankruptcy case is pending in Florida.[65]

---

[64] The Trustee discusses in her pleadings an alleged overpayment of $149,743.43 to ESISP. She includes the allegation overpayment as a setoff defense to ESISP's conversion action. The Trustee did not include a specific count in either her Counterclaim or Trustee's Complaint addressing this allegation and such overpayment allegation is not properly before the Court for determination.

[65] This Court has jurisdiction to determine the conversion claim because it constitutes a core proceeding pursuant to 28 U.S.C. Sections 157(b)(2)(A) and (O). The proceeding concerns the administration of the estate and affects the Trustee's liquidation of assets. The Trustee, in carrying out her duties as a Chapter 7 Trustee, recovered the funds at issue, which constitute property of the estate. Jurisdiction also exists pursuant to Section 157(c)(1) in that the claim is related to the underlying bankruptcy case. The outcome of this proceeding could have an effect on the estate being administered in bankruptcy. *See,* In re Happy Hocker Pawn Shop, Inc., No. 05-16182, 2006 WL 3749567, at *5-6

ESISP's claims against the Trustee are barred by the Waiver and by the estoppel doctrines. The Sale Order constitutes a final, non-appealable order decided on the merits by a court of competent jurisdiction. It is entitled to preclusive effect. "A final judgment on the merits bars further claims by parties or their privies based on the same cause of action." <u>Montana v. United States</u>, 440 U.S. 147, 153 (1979).

ESISP waived all claims against the Trustee pursuant to the Waiver. ESISP has no right to payment of Invoice 15 from funds held by the Trustee pursuant to the Waiver. ESISP has no right to payment of Invoice 16 from funds held by the Trustee because it is a post-sale invoice and is the responsibility of Global. ESISP's and Lykosov's challenge of the Sale Order, which approves the Sale Agreement and Waiver, is barred by the doctrines of res judicata, collateral estoppel, and law of the case.

ESISP's conversion claim fails on the merits. The Florida courts recognize the common law tort of conversion: "[C]onversion occurs when a person asserts a right of dominion over chattel which is inconsistent with the right of the owner and deprives the owner of the right of possession." <u>City of Cars, Inc. v. Simms</u>, 526 So.2d 119, 120 (Fla. 5th DCA), *rev. denied*, 534 So.2d 401 (Fla. 1988); *see also* <u>United American Bank of Cent. Fla., Inc. v. Seligman</u>, 599 So.2d 1014, 1017 (Fla. 5th DCA), *rev. denied*, 613 So.2d 7 (Fla. 1992) (defining conversion as "the exercise of wrongful dominion or control of the property to the detriment of the rights of its actual owner.").[66] The Florida Bankruptcy Courts apply the state law definition of conversion in addressing conversion

---

(11th Cir. December 21, 2006) (explaining "a core proceeding must always implicate the property of the bankruptcy estate.") The <u>In re Happy Hocker</u> case, in which it was held the Bankruptcy Court did not have jurisdiction to determine the conversion claim brought against the trustee, is distinguishable because the Chapter 7 trustee in that case committed an *ultra vires* act; the trustee took action against property that was not property of the bankruptcy estate.
[66] "Civil theft" is a separate cause of action recognized by the Florida courts. To establish an action for civil theft, a plaintiff must prove the statutory elements of theft plus criminal intent. <u>Florida Desk, Inc. v. Mitchell Intern., Inc.</u>, 817 So.2d 1059, 1061 (Fla. App. 5th Dist. 2002). ESISP neither pled nor established a claim for civil theft.

matters. <u>In re Jacobs</u>, 243 B.R. 836, 846 (Bankr. M.D. Fla. 2000); <u>In re Deresinski</u>, 216 B.R. 995, 1000 (Bankr. M.D. Fla. 1998).

To recover for civil conversion pursuant to Florida law, a plaintiff must demonstrate by a preponderance of the evidence: (i) a right to property; (ii) a demand for the return of that property; and (iii) the defendants' refusal to return the property. <u>In re PSI Indus., Inc.</u>, 306 B.R. 377 (Bankr. S.D. Fla. 2003). Where the claim is for conversion of money, the plaintiff must establish additional elements: (i) specific and identifiable money; (ii) possession or an immediate right to possess that money; (iii) an unauthorized act which deprives plaint of that money; and (iv) a demand for return of the money and a refusal to do so. <u>U.S. v. Bailey</u>, 288 F. Supp.2d 1261, 1265 (M.D. Fla. 2003), <i>aff'd</i>, 419 F.3d 1208 (11th Cir. 2005). Element (ii) is the relation-back doctrine retained by Florida law: "Under Florida law, a plaintiff in an action for conversion . . . must establish possession or an immediate right to possession of the converted property at the time of the conversion." <u>U.S. v. Bailey</u>, 419 F.3d at 1212, 1214.

The filing of a bankruptcy case creates an estate comprised of real and personal property including "all legal or equitable interests of the debtor in property as of the commencement of the case" and "proceeds, product, offspring, rents, or profits from property of the estate . . . ." 11 U.S.C. §§ 541(a)(1), (a)(6) (2005). The Debtor's interest in Contract 91 and the profits and proceeds of that interest constitute property of the estate pursuant to 11 U.S.C. Section 541(a). Specific and identifiable funds are at issue in this proceeding, specifically, the City's payments of $136,200.51 and $61,711.78 for Invoice Nos. 15 and 16. The funds received from the City constitute property of the estate pursuant to Section 541 of the Bankruptcy Code.

26

Section 704 of the Bankruptcy Code sets forth a Chapter 7 trustee's duties which include: "collect and reduce to money the property of the estate . . . be accountable for all property received . . . investigate the financial affairs of the debtor. . . ." 11 U.S.C. §§ 704(a)(1), (2), (4). The Trustee fulfilled the directives of Section 704(a) and the June 27, 2005 Order in collecting and preserving the payments from the City. Her retention of the $177,912.29 was proper and in accordance with her trustee duties. All of the funds recovered by the Trustee constitute property of the estate pursuant to 11 U.S.C. Section 541(a) and are subject to distribution in accordance with 11 U.S.C. Section 726(a).

ESISP did not have possession or an immediate right to possess the funds and was not entitled to the funds. ESISP did not make demand for payment of Invoice Nos. 15 and 16. ESISP failed to establish the elements of conversion. ESISP's Complaint is due to be denied.

### Trustee's Counterclaim and Complaint

The Trustee seeks recovery of certain pre- and post-petition transfers through her strong-arm powers. She bases the Counterclaim and Trustee's Complaint on the strong-arm powers codified in 11 U.S.C. Sections 544, 547, 548, 549, and 550. "These avoiding powers exist to implement the goal of every insolvency statue, which is the equal distribution of a debtor's assets among its general non-priority creditors." 5 COLLIER ON BANKRUPTCY ¶544.01, at 544-3 (15th ed. rev. 2005).

The Counterclaim names ESISP as the Defendant and the Trustee's Complaint names Lykosov as the Defendant. The Trustee identifies transfers of funds made to Nikolai Ermanakov, Croftmore Enterprises, Dominium Enterprises, EVGL Corp., V&S Corporation, Fort Point Limited, and Valery Kontamtinov. These persons and entities

27

were not named as defendants in the pending actions nor were they served with notice or process. They were not afforded due process of law guaranteed by the Fifth and Fourteenth Amendments to the Constitution of the United States. The Trustee may not seek avoidance and recovery of any transfers made to Nikolai Ermanakov, Croftmore Enterprises, Dominium Enterprises, EVGL Corp., V&S Corporation, Fort Point Limited, or Valery Kontamtinov in this proceeding.

### *Alter Ego Allegations*

The Trustee contends Energy Smart FL is an "affiliate" of and the "alter ego" of the Debtor. She seeks to have Energy Smart FL's corporate entity disregarded in order to recover transfers of funds allegedly made by Energy Smart FL. The Trustee did not establish which entity, the Debtor or Energy Smart FL, made each transfer.

The standard for piercing a corporate veil is governed by applicable state law.[67] "The corporate entity is an accepted, well used and highly regarded form of organization in the economic life of our state [of Florida] and nation."[68] "Every corporation is organized as a business organization to create a legal entity that can do business in its own right and on its own credit. . . ."[69] Courts should be reluctant to pierce the corporate veil and "do so only in a court of competent jurisdiction, after notice to and full opportunity to be heard by all parties, and upon showing of cause which necessitates the corporate entity being disregarded in order to prevent some injustice."[70]

Energy Smart FL was not named as a Defendant by the Trustee in the Counterclaim or Trustee's Complaint and it was not served with process. Energy Smart

---

[67] House of Koscot Dev. Corp. v. American Line Cosmetics, Inc., 468 F.2d 64, 66 (5th Cir. 1972); Dania Jai-Alai Palace, Inc. v. Sykes, 450 So.2d 1114, 1117-1122 (Fla. 1984) (surveying Florida case law addressing veil piercing).
[68] Roberts' Fish Farm v. Spencer, 153 So.2d 718, 721 (Fla. 1963).
[69] Advertects, Inc. v. Sawyer Indus., Inc., 84 So.2d 21, 23-24 (Fla. 1955).
[70] Id.

FL was not provided notice and a full opportunity to respond to the alter ego allegations. Energy Smart FL was not afforded due process. The Trustee's alter ego claims are due to be denied.

The Trustee's alter ego claims are also due to be denied on substantive grounds. A plaintiff must establish for a court to pierce a corporate veil in Florida:

> . . . the corporation is a mere device or sham to accomplish some ulterior purpose, or is a mere instrumentality or agent of another corporation or individual owning all or most of its stock, or where the purpose is to evade some statute or to accomplish some fraud or illegal purpose.[71]

The Florida Supreme Court emphasized a corporate veil "may not be pierced absent a showing of improper conduct."[72] A plaintiff must establish grounds for piercing a corporate veil by a preponderance of the evidence.[73]

Suspicious circumstances surround the Debtor and Energy Smart FL. Wiegand is the sole shareholder and director of both entities, and has controlled and dominated both from their incorporation and at all times thereafter. He is the primary decision-maker for both entities. Neither entity had other employees. Both have their office at the Melbourne Address. Energy Smart FL was formed by Wiegand during the EIC litigation and he named the new entity the same as the Debtor—"Energy Smart, Inc." Wiegand and Lykosov treated the entities as if they were interchangeable and failed to distinguish the two in their communications, letterhead, bank statements, and funds disbursements.

The Trustee's burden in establishing grounds for piercing Energy Smart FL's corporate veil is a heavy one and she has not met that burden. The parties concede Energy Smart FL is a Florida corporation and the Debtor is a Delaware corporation.

---

[71] House of Koscot, 468 F.2d 64 at 66; Orlando Reg'l Healthcare Sys., Inc. v. Columbia/HCA Healthcare Corp., 923 F. Supp. 1534, 1541 (M.D. Fla. 1996) ("Florida courts may pierce the corporate veil only upon a showing that the parent corporation used the subsidiary as a mere instrumentality and that this was done for an improper purpose.")
[72] Dania Jai-Alai Palace, 450 So.2d at 1121.
[73] Id.

They appear to maintain separate bank accounts. The Trustee did not present evidence as to which entity owns each account, whether funds from the accounts were intermingled, whether corporate formalities are followed by each entity, and whether they maintain corporate records. She did not establish Energy Smart FL is a mere device or sham to accomplish some ulterior purpose or is a mere instrumentality or agent of the Debtor. She did not establish Energy Smart FL's purpose is to evade some statute or to accomplish some fraud or illegal purpose.

The Trustee has not established by a preponderance of the evidence Energy Smart FL is the alter ego of the Debtor. She is not entitled to recover any transfers of funds made by Energy Smart FL.

### *Insider Status*

The Trustee seeks to reach back and recover payments made to Lykosov and ESISP within one-year of the Petition Date contending they are insiders of the Debtor pursuant to 11 U.S.C. Section 101(31). Section 101(31) sets forth a non-exhaustive definitional list of insiders. In re Craig Sys. Corp., 244 B.R. 529, 539 (Bankr. D. Mass. 2000). The term "insider" is broadly defined by the courts to include "any person or entity whose relationship with the debtor is sufficiently close so as to subject the relationship to careful scrutiny." Koch v. Rogers (In re Broumas), 135 F.3d 769 (4th Cir. 1998).

Lykosov exercised considerable control over the Debtor as evidenced by the Power of Attorney and the directions he gave to Wiegand, which Wiegand acted upon. Lykosov is an insider of the Debtor by virtue of the control he exercised over the Debtor pursuant to 11 U.S.C. Section 101(31). ESISP was the agent of the Debtor and was

created solely to represent the Debtor's interests in Russia. It had no legal authority to conduct business on its own behalf and all actions taken were taken on behalf of the Debtor. ESISP is an insider of the Debtor pursuant to 11 U.S.C. Section 101(31).

### Count I: Florida Statute § 726 and 11 U.S.C. § 544

Section 544 of the Bankruptcy Code is designed to aid a trustee in recovering assets for the benefit of the creditors of the estate. A trustee, pursuant to Section 544(b), has the rights and powers to avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by applicable state or federal law. Section 544(b) provides:

> (b) (1) Except as provided in paragraph (2), the trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under 502(e) of this title.[74]

The standard used to determine whether a transfer is fraudulent as to creditors is proof by preponderance of the evidence.[75]

The extent of a trustee's avoidance powers pursuant to Section 544(b) is measured by applicable substantive state law of the jurisdiction governing the transferred property in question.[76] Section 544 acts in tandem with state law. The Debtor, through Wiegand's actions and dominion, is located and acted in Florida. The applicable substantive state law is Florida law.

---

[74] 11 U.S.C. § 544(b) (2005). Paragraph (2) of Section 544(b) sets forth that Paragraph (1) shall not apply to a transfer of a charitable contribution. 11 U.S.C. § 544(b)(2) (2005). The transfers at issue do not involve charitable contributions, thus 11 U.S.C. Section 544(b)(2) is inapplicable.
[75] In re Stewart, 280 B.R. 268, 281 (Bankr. M.D. Fla. 2001).
[76] 5 COLLIER ON BANKRUPTCY ¶ 544.02, at 544-5 (Alan N. Resnick et al. eds., 15th ed. rev. 2005); In re Collins, 234 B.R. 88, 91 at n.2 (Bankr. W.D. Mo. 1999); In re Richman, 181 B.R. 260, 264 (Bankr. D. Md. 1995).

31

Florida Statutes Sections 726.105(1)(a) and (1)(b) provide for the avoidance of transfers made or obligations incurred by a debtor arising from actual or constructive fraud.[77] A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation through actual fraud or constructive fraud.[78] The courts look at the totality of the circumstances and the badges of fraud surrounding the transfers given the difficulties in establishing actual intent. In re World Vision Entertainment, Inc., 275 B.R. 641, 656 (Bankr. M.D. Fla. 2002).

Remedies for a plaintiff seeking to avoid a transfer are set forth in Section 726.108. Those remedies are limited by the defenses to a fraudulent transfer action set forth in Section 726.109. A transfer is not voidable pursuant to Section 726.105(1)(a) where the transferee took the transfer "in good faith and for a reasonably equivalent value . . ."[79]

The Trustee failed to delineate which specific Florida statute she bases Count I upon in the Counterclaim and Trustee's Complaint. Some of the facts and circumstances surrounding the pre-petition transfers made to Lykosov are suspicious. All of the transfer amounts are round figures. The payments were not made pursuant to a schedule, but

---

[77] Florida adopted the Uniform Fraudulent Transfer Act effective January 1, 1988 found at FLA. STAT. §§ 726.101, et seq. See Cumulative Annual Pocket Part Vol. 20A at p. 99 (West 2006).

[78] Section 726 provides, in part:

   (1) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

      (a) With actual intent to hinder, delay, or defraud any creditor of the debtor; or
      (b) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
      1. Was engaged or was about to engage in a business or transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
      2. Intended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or ability to pay as they became due.

FLA. STAT. § 726.105(1) (West 2000).

[79] FLA. STAT. § 726.109 (West 2000).

arbitrarily. Lykosov did not produce documentation detailing how his commissions were calculated or the value he provided in exchange for each payment. There was no independent evidence verifying Lykosov's statements that all of the work invoiced was actually performed and accepted by the City. No invoices were in the documents produced to the Trustee. Irregularities surround the invoices presented to the Trustee. The Trustee was prohibited from communicating with the City to verify what work was performed and whether the Acts of Acceptance are genuine.

While suspicious circumstances exist, there is insufficient evidence to establish actual or constructive intent to defraud by Lykosov. Lykosov was entitled to some payment. He was instrumental in negotiating and obtaining Contract 91. He, by written agreement with the Debtor, was entitled to a commission for his services. He performed services and assisted the Debtor with carrying out Contract 91. The remuneration he is entitled to was not established.

The Trustee failed to establish by a preponderance of the evidence the elements of either Florida Statutes Section 726.105(1)(a) or Section 726.105(1)(b). Count I of the Counterclaim and Count I of the Trustee's Complaint are due to be denied.

### Count II:  11 U.S.C. § 548

The Trustee contends in Count II of her Counterclaim and Trustee's Complaint certain transfers made by the Debtor or Energy Smart FL within one year of the Petition Date were fraudulent and are recoverable pursuant to Section 548 of the Bankruptcy Code. Lykosov received the following transfers by wire from a BA 6739 and the Colonial Accounts within one year of the Petition Date:  $49,000.00 on March 19, 2004;

33

$30,000.000 on April 26, 2004; $76,000.00 on June 8, 2004; $3,000.00 on December 28, 2004; $1,000.00 on January 7, 2005; and $10,000.00 on February 8, 2005.[80]

The Trustee did not establish *the Debtor* made the transfers. She did not establish the transfers were made with the actual intent to hinder, delay, or defraud existing or future creditors of the Debtor. The Trustee did not establish the Debtor received less than a reasonably equivalent value in exchange for the transfers to Lykosov. Count II of the Counterclaim and Count II of the Trustee's Complaint are due to be denied.

### Count III:  11 U.S.C. § 549

The Trustee contends in Count III of the Counterclaim and Trustee's Complaint the Debtor made unauthorized post-petition transfers and those transfers are recoverable pursuant to Section 549 of the Bankruptcy Code.  Lykosov received two post-petition transfers of funds by wire from the Colonial Account:  $5,000.00 on April 6, 2005 and $5,000.00 on April 19, 2005.[81]

The funds in the Colonial Account on the Petition Date were proceeds of Contract 91 paid by the City and constituted property of the estate pursuant to 11 U.S.C. Sections 541(a)(1) and (6).  The funds wired to Lykosov were property of the estate.  The wire transfers constitute transfers of property pursuant to 11 U.S.C. Section 101(54).  The transfers were not authorized by any Bankruptcy Code provision or by the Court. Lykosov failed to establish the transfers were valid pursuant to Federal Rule of Bankruptcy Procedure 6001.[82]  The Trustee failed to establish the Debtor made the transfers of funds.  The transfers are not avoidable pursuant to 11 U.S.C. Section 549.

---

[80] Trustee's Exh. No. 153. Apparently, Lykosov was entitled to post-petition credits of $27,200.00 for funds wired into the account. The "credits" were not sufficiently explained.
[81] Trustee's Exh. Nos. 153, 160.
[82] "Any entity asserting the validity of a transfer under § 549 of the Code shall have the burden of proof."  Fed. R. Bankr. P. 6001 (2005).  Once the trustee establishes a postpetition transfer of estate assets occurred, the defendant is required to prove the validity of the transfer.  In re Alien, 217 B.R. 952, 957 (Bankr. M.D. Fla. 1998).

34

Count III of the Counterclaim and Count III of the Trustee's Complaint are due to be denied.

<h3 align="center">Count IV:  11 U.S.C. § 547</h3>

The Trustee contends in Count IV the transfers made to Lykosov within one year of the Petition Date are recoverable preferences pursuant to Section 547 of the Bankruptcy Code.[83]  The Trustee did not establish:  (i) the transfers were made for or on account of an antecedent debt owed by the Debtor before each transfer was made; and (ii) the transfers enabled Lykosov to receive more than he would have received had the transfers not been made and he received payment for such debts to the extent provided by the provision of the Bankruptcy Code.  Count IV of the Counterclaim and Count IV of the Trustee's Complaint are due to be denied.

<h3 align="center">Count V:  11 U.S.C. § 550</h3>

Section 550 of the Bankruptcy Code addresses the liability of the transferee of an avoidable transfer.[84]  The purpose of Section 550(a) is "to restore the estate to the financial condition it would have enjoyed if the transfer had not occurred."[85]  The Trustee failed to establish any of the transfers are avoidable pursuant to either Section 544, 547, 548, or 549.  There are no avoided transfers to recover for the benefit of the estate

---

[83] See the Count II discussion *supra*. Lykosov received the following transfers from the Debtor within one year of the Petition Date:  $49,000.00 on March 19, 2004; $30,000.000 on April 26, 2004; $76,000.00 on June 8, 2004; $3,000.00 on December 28, 2004; $1,000.00 on January 7, 2005; and $10,000.00 on February 8, 2005.  He was entitled to post-petition credits of $27,200.00.

[84] Section 550(a) provides:
    (a) Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—
       (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or
       (2) any immediate or mediate transferee of such initial transferee.
11 U.S.C. § 550(a) (2005).
[85] In re Green, 268 B.R. 628, 652 (Bankr. M.D. Fla. 2001) (quoting In re American Way Service Corp., 229 B.R. 530-1 (Bankr. S.D. Fla. 1999)).  Section 550 makes no exception for innocence.  An initial transferee is liable for the fraudulent transfer even if he or she is completely innocent in the matter. Id.

35

pursuant to Section 549.  Count V of the Counterclaim and Count V of the Trustee's Complaint are due to be denied.

### *Summary*

All funds recovered and held by the Trustee constitute property of the estate pursuant to 11 U.S.C. Section 541(a).  ESISP did not establish the elements of conversion pursuant to Florida state law.  ESISP's Complaint seeking judgment of $177,912.29 against the Trustee is due to be denied.  Judgment shall be entered in favor of the Trustee and against ESISP.

Nikolai Ermanakov, Croftmore Enterprises, Dominium Enterprises, EVGL Corp., V&S Corporation, Fort Point Limited, and Valery Kontamtinov were not afforded due process of law.  The Trustee is not entitled to relief against these persons and entities.

The Trustee is not entitled to relief against Energy Smart FL.  Energy Smart FL was not afforded due process of law and the Trustee did not establish its corporate entity should be disregarded pursuant to Florida state law.

The Trustee did not establish the transfers delineated in her Counterclaim are avoidable and recoverable pursuant to 11 U.S.C. Sections 544, 547, 548, 549, 550 or Florida Statute Section 726.  Counts I through V of the Counterclaim are due to be denied.  Judgment shall be entered in favor of ESISP and against the Trustee.

The Trustee did not establish the transfers delineated in the Trustee's Complaint are avoidable and recoverable pursuant to 11 U.S.C. Sections 544, 547, 548, 549, 550 or Florida Statute Section 726. Counts I through V of the Trustee's Complaint are due to be denied. Judgment shall be entered in favor of Lykosov and against the Trustee.

A separate Judgment consistent with these Findings of Fact and Conclusions of Law shall be entered contemporaneously.

Dated this 22nd day of March, 2007.

ARTHUR B. BRISKMAN
United States Bankruptcy Judge

37